1  SEYFARTH SHAW LLP
   Brian P. Long (SBN 232746)
2  bplong@seyfarth.com
   601 South Figueroa Street, Suite 3300
3  Los Angeles, California 90017-5793
   Telephone:    (213) 270-9600
4  Facsimile:    (213) 270-9601

5  SEYFARTH SHAW LLP
   Michael Afar (SBN 298990)
6  mafar@seyfarth.com
   2029 Century Park East, Suite 3500
7  Los Angeles, California 90067
   Telephone:    (310) 277-7200
8  Facsimile:    (310) 201-5219

9  SEYFARTH SHAW LLP
   Phillip J. Ebsworth (SBN 311026)
10 pebsworth@seyfarth.com
   400 Capitol Mall, Suite 2350
11 Sacramento, California 95814
   Telephone:    (916) 448-0159
12 Facsimile:    (916) 558-4839

13 Attorneys for Defendants
   HYATT CORPORATION and
14 GRAND HYATT S.F., LLC

15

16
                    UNITED STATES DISTRICT COURT
17
                   NORTHERN DISTRICT OF CALIFORNIA
18

19

| | |
|---|---|
| JOE VIGIL, individually and on behalf of himself and all others similarly situated, | Case No. |
| Plaintiff, | **DEFENDANT HYATT CORPORATION AND DEFENDANT GRAND HYATT S.F., L.L.C.'S NOTICE OF REMOVAL** |
| v. | (San Francisco Superior Court, Case No. CGC-22-597517 |
| HYATT CORPORATION, a Delaware Corporation; GRAND HYATT S.F., LLC, a Delaware Limited Liability Company, doing business as GRAND HYATT SAN FRANCISCO; and DOES 1-50, inclusive, | Complaint Filed:   January 7, 2022 |
| Defendants. | |

**TO THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF, JOE VIGIL, AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Hyatt Corporation ("Hyatt") and Defendant Grand Hyatt SF, L.L.C. ("Grand Hyatt") (collectively, "Defendants") file this Notice of Removal, pursuant to 28 U.S.C. §§ 1331, 1441(a), and 1446 based on federal question jurisdiction, to effectuate the removal of the above-captioned action from the Superior Court for the County of San Francisco to the United States District Court for the Northern District of California. Removal is proper for the following reasons:

**I.      BACKGROUND**

1.      On January 7, 2022, filed a "PAGA Complaint" in the Superior Court of California for the County of San Francisco, titled "*JOE VIGIL, individually and on behalf of himself and all others similarly situated, v. HYATT CORPORATION, a Delaware Corporation; GRAND HYATT S.F., LLC, a Delaware Limited Liability Company, doing business as GRAND HYATT SAN FRANCISCO; and DOES 1-50, inclusive*," Case No. CGC-22-597517 ("Complaint").

2.      On March 9, 2022, Defendants' registered agent for service of process in California received, via process server, the Summons; Notice of Case Management Conference; Civil Case Cover Sheet; and Complaint. A true and correct copy of the packets received by Defendants is attached hereto as **Exhibit A**.

3.      Plaintiff asserts one cause of action in his Complaint under the California Labor Code Private Attorneys General Act ("PAGA"), California Labor Code §§ 2698 *et seq.* The Complaint seeks civil penalties and attorneys' fees, expenses, and costs for alleged violations of California Labor Code sections 201, 202, 203, 204, 210, 216, 225.5, 226, 226.3, 226.7, 246(l), 510, 512, 558(a) 1174, 1174.5, 1182.12, 1194, 1197, 1197.1 1198, and 2802. (Ex. A, Complaint, Prayer for Relief.)

4.      On April 7, 2022, Defendants filed their Answer to Plaintiff's Complaint in San Francisco County Superior Court. A true and correct copy of the Answer filed to Plaintiff's Complaint is attached hereto as **Exhibit B**.

5.      Defendants have not filed or received any other pleadings or papers, other than the pleadings described as Exhibits A and B, in this action prior to this Notice of Removal.

## II. TIMELINESS OF REMOVAL

6. The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

7. This Notice of Removal is timely because it is filed within thirty (30) days of service of the Complaint, by personal service on Defendants' agent for service of process, on March 9, 2022. Cal. Code Civ. Proc. § 415.10 ("A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this manner is deemed complete at the time of such delivery."); 28 U.S.C. § 1446(b). Thirty (30) days from the service of the Complaint on Defendants on March 9, 2022 is April 8, 2022.

8. Defendants remove this matter under federal question jurisdiction, based on the fact that Plaintiff's claims on behalf of himself and the allegedly aggrieved employees are preempted by Section 301 of the Labor Management Relations Act ("Section 301"), 29 U.S.C. § 185, as detailed more fully below.

## III. FEDERAL QUESTION REMOVAL BASED ON LABOR MANAGEMENT RELATIONS ACT ("LMRA") SECTION 301 PREEMPTION

9. Removal is proper where the federal courts have original jurisdiction over an action brought in state court. 28 U.S.C. § 1441(a). Federal question jurisdiction arises out of the fact that Plaintiff's claims are preempted by Section 301. Pursuant to Section 301, "[s]uits for violation of contracts between an employer and a labor organization… may be brought in any district court of the United States having jurisdiction of the parties without regard to the amount in controversy or without regard to the citizenship of the parties." *Firestone v. Southern California Gas Co.*, 219 F.3d 1063, 1065 (9th Cir. 2000), *reh'g denied* 281 F.3d 801 (9th Cir. 2002). A collective bargaining agreement ("CBA") is such a contract, and Section 301 preempts all state-law claims "founded directly on rights created by

2

collective-bargaining agreements." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 394 (1987). Section 301 also "authorizes federal courts to fashion a body of federal law for the enforcement of these collective bargaining agreements." *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957).

10. The Ninth Circuit has developed a two-step inquiry to determine whether the LMRA preempts a state law claim. *Alaska Airlines, Inc. v. Schurke*, 898 F.3d 904, 920 (9th Cir. 2018) *cert. denied*, 139 S. Ct. 1445 (2019) ("This circuit, however, has distilled the Supreme Court's RLA and LMRA § 301 case law into a two-part inquiry into the nature of a plaintiff's claim"). First, the court evaluates the "legal character" of the claim by asking "whether a particular right is grounded in a CBA" and "whether [the claim] seeks purely to vindicate a right or duty created by the CBA itself." *Id*. at 921 (quoting *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994)). If it does, the claim is preempted. If not, the court then asks "whether litigating the state law claim nonetheless requires interpretation of a CBA." *Id*. at 921.

11. In other words, the Court must first ask "whether the asserted cause of action involves a 'right [that] exists solely as a result of the CBA.'" *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019) (quoting *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1032 (9th Cir. 2016)). Under this test, a claim is preempted if it seeks "purely to vindicate a right or duty created by the CBA itself." *Schurke*, 898 F.3d at 921. The Court must proceed to the second step only if the claim seeks to vindicate a right not created by the CBA. *Curtis*, 913 F.3d at 1153 (explaining if "the claim seek[s] 'to vindicate a right or duty created by the CBA itself … 'then the claim is preempted and [the] analysis ends there'") (internal citations omitted).

12. Here, it is irrelevant that Plaintiff did not specifically reference or invoke the terms of the CBA in his Complaint. Under the artful pleading doctrine, plaintiffs may not avoid federal jurisdiction simply by pleading a claim that can only be made under federal law as a state law claim. *See Olguin v. Inspiration Consol. Copper Co.*, 740 F.2d 1468, 1472 (9th Cir. 1984), *overruled on other grounds by Allis-Chalmers*, 471 U.S. at 220 ("[E]mployees frequently attempt to avoid federal law by basing their complaint on state law, disclaiming any reliance on the provision of the collective bargaining agreement… In such cases the 'artful pleading' doctrine requires that the state law complaint be recharacterized as one arising under the collective bargaining agreement. The case may then be removed

DEFENDANTS' NOTICE OF REMOVAL

81054453v.1

to federal court and adjudicated under the appropriate federal law."); *Newberry v. Pacific Racing Association*, 854 F.2d 1142, 1146 (9th Cir. 1988) ("[T]he key to determining the scope of section 301 preemption is not based on how the complaint is framed, but whether the claims can be resolved only by referring to the terms of the bargaining agreement."); *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987) ("The district court… properly looked beyond the face of the complaint to determine whether the contract claim was in fact a section 301 claim for breach of a collective bargaining agreement 'artfully pleaded' to avoid federal jurisdiction.").

### A.  The District Court Has Federal Question Jurisdiction Over Plaintiff's Claims

13. Plaintiff seeks to represent "aggrieved employees," which Plaintiff defines as "all non-exempt employees, either directly or indirectly, working for Defendants in the State of California." (Ex. A, Compl. ¶ 2.) Plaintiff's definition of "aggrieved employees" encompasses thousands of employees who are subject to a CBA. A true and correct copy of the CBA is attached as **Exhibit A** to the Declaration of Michael D'Angelo in support of this Notice of Removal.

14. Plaintiff seeks to represent thousands of "aggrieved employees" who are subject to CBAs. The Ninth Circuit has held that the analysis focuses on the relationship between the claims and the CBA. *See e.g.*, *Melanson v. United Air Lines, Inc.*, 931 F.2d 558, 561 (9th Cir. 1991) ("It is the relationship of the claim to the CBA, regardless of the plaintiff's employment status, that guides the preemption analysis."); *Sarmiento v. Sealy, Inc.*, 2019 WL 3059932, at *8-9 (N.D. Cal. July 12, 2019) (finding that Section 301 preemption applies on "a CBA-by-CBA basis, rather than employee-by-employee basis").

15. The fact that Plaintiff asserts one claim under PAGA is of no consequence to federal question jurisdiction under Section 301, because the PAGA claim is based on underlying violations of the California Labor Code, which are preempted. *See, e.g.*, *Radcliff v. San Diego Gas & Elec. Co.*, 519 F. Supp. 3d 743, 751 (S.D. Cal. 2021) ("[T]he Court has original jurisdiction over Plaintiff's PAGA claim because … Plaintiff's underlying overtime claim is preempted by § 301 of the LMRA."); *Linebarger v. Graphic Packaging Int'l, LLC*, 2020 WL 1934958, at *5 (C.D. Cal. Apr. 22, 2020) (denying motion to remand, even though plaintiff asserted one cause of action under PAGA, because "the Court ha[d] federal question jurisdiction over the overtime based PAGA penalties claims").

16. Moreover, Plaintiff's PAGA claim rises and falls with the underlying California Labor Code claims, which further supports Section 301 preemption. *See, e.g.*, *Sanders v. Old Dominion Freight Line, Inc.*, 2018 WL 6321628, at *4 (C.D. Cal. June 25, 2018) ("Plaintiffs' PAGA claim rises or falls with their other claims."); *Zackaria v. Wal-Mart Stores, Inc.*, 142 F. Supp. 3d 949, 958 (C.D. Cal. 2015) ("A plaintiff pursuing a representative PAGA action must prove the alleged underlying Labor Code violations (i) first, as to him or herself, and (ii) second, as to all . . . aggrieved employees for which a penalty also is sought."); *Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp. 2d 1169, 1182 (C.D. Cal. 2008) ("Plaintiff's claim under the Private Attorneys General Act is wholly dependent upon her other claims" and "[b]ecause all of Plaintiff's other claims fail as a matter of law, so does her PAGA claim") *aff'd*, 368 F. App'x 761 (9th Cir. 2010); *Price v. Starbucks Corp.*, 192 Cal. App. 4th 1136, 1147 (2011) ("Because the underlying causes of action fail, the derivative UCL and PAGA claims also fail.")

17. Here, Plaintiff's Complaint alleges that "Plaintiff and the Aggrieved Employees worked in excess of eight (8) hours in [*sic*] day and/or over forty (40) hours in a workweek, but were not properly paid for such time at a rate of time and one-half the employee's regular rate of pay per hour." (Ex. A, Compl. ¶¶ 27, 121.) Plaintiff's Complaint also alleges that Defendant failed to compensate Plaintiff and the allegedly aggrieved employees in a "timely fashion" in violation of Labor Code section 204. (*Id.* at ¶¶ 43, 54, 82.) Based on these allegations, Plaintiff asserts other derivative theories of liability (*e.g.*, failure to provide accurate wage statements in violation of California Labor Code § 226, failure to timely pay wages upon termination in violation of California Labor Code § 203, and failure to pay meal and rest break premiums at the regular rate of pay in violation of California Labor Code § 226.7). (*Id.* at ¶¶ 70, 79, 81 88, 99.)

18. Plaintiff's claims under California Labor Code §§ 204 and 510 implicate CBA considerations, as well as exemptions under the California Labor Code. For example, California Labor Code § 510 "**do[es] not apply to an employee covered by a valid collective bargaining agreement** if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." *See* Cal. Lab. Code § 514 (emphasis added.) Similarly, under California Labor Code § 204(c),

5

"**when employees are covered by a collective bargaining agreement** that provides different pay arrangements, **those arrangements shall apply to the covered employees**," rather than the other provisions of Labor Code § 204. (Emphasis added.)

### B. Plaintiff's Claim Of Violations Of Labor Code § 510 Creates Federal Question Jurisdiction

19. Plaintiffs' theory of liability under California Labor Code § 510 renders the Complaint preempted under Section 301 and creates federal question jurisdiction.

20. The recent decision of the Ninth Circuit in *Curtis*, 913 F.3d at 1152 is directly on point. In *Curtis*, the Ninth Circuit held that an employee's claim for overtime pay under § 510 of the California Labor Code existed "solely as a result of the CBA" because the relevant statute governing overtime claims permitted "unionized employees to contract around [the statute's requirements]." *Curtis*, 913 F.3d at 1154–1155. Specifically, § 510(a) states that its requirements "do not apply to the payment of overtime compensation to an employee working pursuant to ... [a]n alternative workweek schedule adopted pursuant to a collective bargaining agreement" that complies with certain requirements. *Id.* at 1153 (quoting Cal. Lab. Code § 510). The Ninth Circuit therefore held that if employers were required to comply with the default rule regarding overtime compensation despite the existence of a qualifying CBA that created alternative arrangements, the statutory language above would be rendered superfluous. *Id.* at 1154. The plaintiff's right to overtime payments therefore existed solely as a result of the CBA, and as such his state law overtime claim was preempted:

> Curtis's argument fails, however, in light of section 510(a)(2), which provides that the "requirements of this section do not apply to the payment of overtime compensation to an employee working pursuant to ... [a]n alternative workweek schedule adopted pursuant to a collective bargaining agreement pursuant to Section 514."
>
> Section 514 in turn states that "Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage." Cal. Lab. Code § 514.
>
> **By its terms, therefore, the default definition of overtime and overtime rates in section 510 does not apply to an employee who is subject to a qualifying CBA.** If Curtis's CBAs in this case meet the requirements of section 514, **Curtis's right to overtime "exists solely as a result of the CBA," and therefore is preempted under § 301.**

6

1  *Curtis*, 913 F.3d at 1153–1155 (emphasis added).

2  21.  Here, the CBA which governs the employment of thousands of allegedly aggrieved employees, triggers California Labor Code § 514 and preempts any claim under California Labor Code § 510.

22.  The CBA provides for wages, hours of work, and working conditions of California hourly employees—both generally and for specific departments. (*See, e.g.*, D'Angelo Decl., Ex. A, CBA pp. 57, 87, 100, 114–118.) The CBA expressly provides for premium wage rates for all overtime hours worked, requiring that "[w]ork in excess of eight (8) hours in a day or forty (40) hours in a week, shall be compensated for at the rate of time and one-half (1-1/2) the regular rate of pay." (*Id*. at p. 57.) Further, the CBA provides a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage. (*Id.* at pp. 114–118; *see also* p. 87 ("Eight (8) consecutive hours shall constitute a "Straight Shift." Except as otherwise specifically provided all wage rates established herein are for the Straight Shift.))

23.  Clearly, some of the wage rates, *e.g*., $224.49, are more than 30% of the state minimum wage, even if the highest state minimum wage rate of $15 per hour for 2022 is extrapolated during the entire PAGA period.[1] For purposes of Section 301 preemption, it is not necessary for **all** potential "aggrieved employees" to meet the requirements of earning 30% more than the state minimum wage. So long as **some** potential "aggrieved employees" meet these requirements, then Section 301 preemption applies. There is Section 301 preemption if a claim "involves a 'right [that] exists solely as a result of the CBA.'" *Curtis*, 913 F.3d at 1152.

C.  **Plaintiff's Claim Under California Labor Code § 204 Also Creates Federal Question Jurisdiction**

24.  Plaintiff's theory of liability under California Labor Code § 204 also renders the Complaint preempted under Section 301 and creates federal question jurisdiction.

25.  Where a CBA contains language regarding the timing of payments of wages, the CBA agreement supersedes the timeliness provisions of California Labor Code § 204(d). Indeed, courts have routinely dismissed claims under California Labor Code § 204 where there is a collective bargaining

---

[1] A daily wage rate of $224.49 equates to an hourly rate of $28.06125.

7

agreement. *See Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1203 (C.D. Cal. 2015) (granting employer's motion to dismiss; "Live Nation contends that although plaintiffs assert the third cause of action under §§ 204, 510, and 1194, the crux of plaintiffs' allegations is not that overtime was not paid or was paid in an improper amount, but rather that payment was not timely. As a result, it contends that the claim is preempted because the 2015 CBA supersedes the timeliness provisions of § 204 under § 204(c)… Because under Labor Code §§ 204, 510, and 1194, a compliant CBA applies rather than the Labor Code, the 2015 CBA governs plaintiffs' third cause of action. The claim is therefore preempted."); *Bradford v. Prof'l Tech. Sec. Servs. Inc. (Protech)*, 2020 WL 2747767, at *5 (N.D. Cal. May 27, 2020) ("Because the CBA here provides for a different pay arrangement than the statute, Bradford's right to timely payment exists solely as a result for the CBA and is preempted").

26. The CBA provides that certain employees shall be paid on a semi-monthly basis while others may be paid on a weekly or even daily basis. (D'Angelo Decl., Ex. A, CBA, p. 78.) Moreover, the CBA provides that "a claim of any employee for any payment of any additional compensation or sum due under the terms of this Agreement for all forms of overtime … shall not go beyond a sixty (60) day period, unless such claim is reported to the Union by the aggrieved employee and the Employer is notified by the Union within ten (10) days of the pay period when such claim or sum should have been paid." (*Id.* at p. 29.)

27. Thus, the CBA provides the sole remedy for the timely payment of wages, which arise entirely out of these provisions of the CBA.

## IV.     SUPPLEMENTAL JURISDICTION

28. If the Court determines that any of Plaintiff's claims raise a federal question under Section 301 of the LMRA, the Court may exercise supplemental jurisdiction over Plaintiff's remaining claims pursuant to 28 U.S.C. section 1367(a), because the claims arise as part of the "same case and controversy."

29. Plaintiff's claim for failure to provide accurate wage statements in violation of California Labor Code § 226 are part of the "same case and controversy" as Plaintiff's preempted claims under California Labor Code §§ 510 and 204, because Plaintiff contends that Defendants' wage statements do

not accurately list "the total number of hours worked," which includes overtime, and do not accurately reflect the timely payment of wages. (Ex. A, Compl. ¶ 101.)

30. Plaintiff's claims for failure to provide meal and rest periods in violation of California Labor Code §§ 512 and 226.7 are part of the "same case and controversy," because Plaintiff contends that the "premium pay" required for meal or rest period violations was not paid or paid in the incorrect amount. (Ex. A, Compl. ¶¶ 70, 81.)

31. Plaintiff further contends that he and the allegedly aggrieved employees did not receive payment of all wages, including overtime and minimum wages and meal and rest period premiums, within any time permissible under California Labor Code section 204. (Exh. A, Compl. ¶¶ 82–84.) Thus, Plaintiffs concede that their other claims for minimum wages, meal period premiums, and rest period premiums are part of the "same case and controversy" as her California Labor Code § 204 claim.

32. Pursuant to U.S.C. § 1367(a), the Court has supplemental jurisdiction over all of Plaintiff's claims because it has federal jurisdiction over the PAGA cause of action, which encompasses every claim. As such, all claims arise from the "same case or controversy." *See Nishimoto v. Federman-Bachrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990) ("[A] district court may exercise pendent jurisdiction over state law claims arising from a [common] nucleus of operative fact."). Considerations of convenience, judicial economy and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims in the Complaint, and Plaintiff "would ordinarily be expected to try [all of their claims] in one judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725-26 (1966).

**V.     VENUE**

33. Venue lies in the United States District Court for the Northern District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(a). This action originally was brought in San Francisco County Superior Court of the State of California, which is located within the Northern District of California. 28 U.S.C. § 84(a). Therefore, venue is proper because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## VI. NOTICE TO STATE COURT AND TO PLAINTIFF

34. A true and correct copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the San Francisco County Superior Court of the State of California as required under 28 U.S.C. § 1446(d).

35. Defendants will give prompt notice of the filing of this Notice of Removal to Plaintiff and to the Clerk of the Superior Court of the State of California in the County of San Francisco. The Notice of Removal is concurrently being served on all parties.

## VII. PRAYER FOR REMOVAL

36. WHEREFORE, Defendants pray that this civil action be removed from Superior Court of the State of California for the County of San Francisco to the United States District Court for the Northern District of California.

DATED: April 8, 2022

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/Phillip J. Ebsworth*
Brian Long
Michael Afar
Phillip J. Ebsworth
Attorneys for Defendants